UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEN DAVIS, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 2:25-cv-00002-JRS-MJD |
| UNITED STATES OF AMERICA | ) ) |
| Respondent, | ) ) ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF FROM COMMUTATION OF SENTENCE**

The Constitution vests exclusively in the President of the United States the power to issue pardons and reprieves. This power is plenary and, absent a constitutional violation, insulated from attack or judicial review. The President exercised this power when he commuted Len Davis's death sentence to a sentence of life imprisonment without the possibility of parole. Davis, however, refuses to accept, and moves to enjoin, the commutation. *See* Dkt. 1, 5 (Mot.).

Davis is not entitled to injunctive relief for at least three reasons: the commutation power resides exclusively with the President; the commutation does not violate the Constitution; and Davis has no authority to reject the commutation. Therefore, the Court should deny his motion.

**BACKGROUND**

In 1994, Len Davis was a New Orleans Police Department officer who used his position and department's resources to orchestrate the murder of Kim Groves because she filed a police-brutality complaint against Davis's partner. *See United States v. Davis*, 971 F.3d 524, 527 (5th Cir. 2020). A judge in the Eastern District of Louisiana sentenced Davis to death following his convictions for conspiring to violate Groves's civil rights, 18 U.S.C. § 241, and depriving her of those rights under color of law, 18 U.S.C. § 242. *See Davis*, 971 F.3d at 528–29. The Fifth

Circuit Court of Appeals affirmed. *Id.* at 529 (citing *United States v. Davis*, 609 F.3d 663, 699 (5th Cir. 2010)).

Davis sought relief under 28 U.S.C. § 2255 in a 278-page motion raising many claims. *See Davis*, 971 F.3d at 529; *see also United States v. Davis*, No. CR 94-381, R. Doc. 2269 (E.D. La. Mar. 20, 2012). Another judge in the Eastern District of Louisiana, to whom the case was re-allotted after the sentencing judge recused herself, denied all claims. *See Davis*, 971 F.3d at 529 (citing *United States v. Davis*, No. CR 94-381, 2018 WL 1419351, at *3 (E.D. La. Mar. 22, 2018)); *see also* Order Re-Allotting Case, *Davis*, No. CR 94-381, R. Doc. 2422 (E.D. La. Dec. 14, 2015). The Fifth Circuit denied Davis's motion for a certificate of appealability. *Davis*, 971 F.3d at 535.[1]

On December 23, 2024, the President commuted Davis's death sentence to a sentence of life imprisonment without the possibility of parole. *See* Exhibit "A," p. 1.[2] The commutation required no action on Davis's part but directed the Bureau of Prisons (BOP) "to carry into effect the terms of these grants of clemency[.]" Exhibit "A," p. 2.

Davis, who is incarcerated in the United States Penitentiary at Terre Haute, filed an emergency motion for injunctive relief from the commutation order in this Court, which the Clerk's office originally docketed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See* Mot. 1–6; *see also* www.bop.gov/inmateloc/ (searching for Len Davis, Register No. 24325-034, last visited Jan. 11, 2025). He asked this Court to enjoin the BOP "from acting on

---

[1] A detailed recitation of the facts and procedural history of Davis's case is presented in the Fifth Circuit's decision. *See Davis*, 971 F.3d at 527–29.

[2] The copy of the President's warrant was placed in the Eastern District record for Davis's case and reflects that case's ECF pagination. *See United States v. Davis*, CR No. 94-381, R. Doc. 2498 (E.D. La. Dec, 23, 2024).

2

President Joseph Biden's conditioned commutation order" and to maintain his death sentence. Mot. 4. He also requested appointment of counsel, Mot. 4, which this Court granted. Dkt. 4, p. 3.

## ARGUMENT

**I.      The Court should deny Len Davis's request for relief from his commuted sentence.**

Davis challenges the validity of the President's commutation of his death sentence to a sentence of life imprisonment. He styles his motion as seeking injunctive relief, *see* Mot. 1, and the Clerk's Office initially docketed the pleading as a petition for writ of habeas corpus under 28 U.S.C. § 2241. The government responds to Davis's pleading assuming it is a motion for injunctive relief.[3]

To obtain preliminary injunctive relief, Davis must demonstrate that "1) he has a reasonable likelihood of success on the merits, 2) he has no adequate remedy at law, and 3) he will suffer irreparable harm if preliminary injunctive relief is denied." *Douglas v. Lemmon*, No. 216CV00368JMSDKL, 2016 WL 7034965, at *1 (S.D. Ind. Dec. 2, 2016) (citing *Stifel, Nicholaus & Company, Inc. v. Godfre & Kahn*, 807 F.3d 184, 193 (7th Cir. 2015)). If he establishes those threshold requirements, the Court must "balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *See Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).

Davis is not entitled to relief because he has no reasonable likelihood of success on the merits. The President has plenary authority to commute Davis's sentence. That authority is

---

[3] Whether Davis can proceed under § 2241 depends on how the claim is construed. To the extent Davis is challenging the validity of his sentence, § 2255 is the proper procedural vehicle. *See Hill v. Werlinger*, 695 F.3d 644, 645 (7th Cir. 2012). If he is challenging a facet of his detention or the execution of sentence, § 2241 is the more appropriate vehicle, *see id.*, and Davis would need to exhaust appropriate remedies before seeking relief with the Court. Should the Court construe Davis's pleading as seeking relief under § 2241 or § 2255, the government reserves its right to raise appropriate procedural defenses.

limited only by the Constitution, and Davis has not demonstrated that the commutation issued violates the Constitution or the President's authority. Further, Davis has no authority to reject the President's commutation. As a result, his claim fails.[4]

### A.   Commutation power belongs exclusively to the President.

The Constitution gives the President the exclusive "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. "[T]he pardoning power is an enumerated power of the Constitution," and "its limitations, if any, must be found in the Constitution itself." *Schick v. Reed*, 419 U.S. 256, 267 (1974). This power extends to the commutation of a death sentence to imprisonment. *Biddle v. Perovich*, 274 U.S. 480, 487 (1927) (holding President has authority to commute sentence from death to life imprisonment). Accordingly, "[t]he matters of commutation of sentence, pardon, conditional or otherwise, or parole, are purely the province of the executive department." *Bozel v. United States*, 139 F.2d 153, 156 (6th Cir. 1943) (citing U.S. Const. art. II, § 2, cl. 1; *Ex parte Wells*, 59 U.S. 307 (1856); *United States v. Murray*, 275 U.S. 347, 348 (1928)).

"To carry [a] judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment[.]" *United States v. Benz*, 282 U.S. 304, 311 (1931). "[T]he commutation order affects only how the sentence will be carried out, and 'carrying the judgment into effect is an executive function.' In other words, the Executive commutes the sentence that it executes." *Andrews v. Warden*, 958 F.3d 1072, 1077 (11th Cir. 2020) (quoting *Benz*, 282 U.S. at 311) (brackets

---

[4] Davis did not name his warden or other prison official as a defendant or respondent to his motion, though they would be the proper officials under *Samirah v. O'Connell*, 335 F.3d 545, 551 (7th Cir. 2003), and *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). However, because of the liberal construction afforded Davis's pro se filing, and because any such error could be easily rectified in a future filing, the government requests the Court construe Davis's motion as limited to a proper respondent.

4

omitted). "[A]bsent a violation of the Constitution, the commutation order is insulated from congressional and judicial interference." *Id.* (citing *Schick*, 419 U.S. at 264, 266–67; *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019)); *see also Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) (recognizing "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review").

     **B.**     **Davis fails to demonstrate the commutation violates the Constitution.**

Davis argues there is a "[h]ost of constitutional violations with this attempt to sentence him to life without his acceptance," but he fails to identify any violations and states only they "will be discussed in future filings." Mot. 3. Contrary to his claim, the commutation did not violate the Constitution.

A plain purpose of the broad power conferred by the Constitution is to allow plenary authority in the President to reduce a penalty in terms of a specified number of years or alter it with constitutionally unobjectionable conditions. *Schick*, 419 U.S. at 266. This is the authority the President exercised here. As in *Schick*, the President substituted a life sentence for the death sentence imposed in 2005. This did not violate the Constitution. *See id.* at 258.

Of course, the President's authority is not unlimited. For example, "the President may not aggravate punishment[.]" *Schick*, 419 U.S. at 267. However, the President did not do so in this case: "By common understanding imprisonment for life is a less penalty than death." *Perovich*, 274 U.S. at 487. "The no-parole condition attached to the commutation of [Davis's] death sentence . . . does not offend the Constitution." *See Schick*, 419 U.S. at 267.

To the extent Davis suggests the President sought to violate his rights and requests this Court review the President's reasons for the commutation, his request is improper. "[T]he President may exercise his discretion under the Reprieves and Pardons Clause for whatever

5

reason he deems appropriate and it is not for the [C]ourts to inquire into the rationale of his decision." *Hoffa v. Saxbe*, 378 F. Supp. 1221, 1225 (D.D.C. 1974) (citing *Ex parte Grossman*, 267 U.S. 87 (1925)). Accordingly, the Court should reject any invitation to conduct an inquiry into the President's reasons for commutation.

      **C.**    **The commutation is effective notwithstanding Davis's desire to reject it.**

Finally, the Court should reject Davis's statement that he "does not accept any commutation," Mot. 3, because the choice is not his. "To the executive alone is intrusted the power of pardon; and it is granted without limit." *United States v. Klein*, 80 U.S. 128, 147 (1871). The recipient's consent is irrelevant. *See Perovich*, 274 U.S. at 487. Accordingly, Davis has no say in whether the President may commute his sentence.

The President's commutation of a sentence "is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed." *Id.* at 486 (citing *Grossman*, 267 U.S. at 120–21). Allowing Davis to veto this action would encroach on this exclusive and ultimate authority that is "part of the Constitutional scheme." *See id.* Further, it would:

> permit the President to decide that justice requires the diminution of a term or a fine without consulting the convict, but would deprive him of the power in the most important cases and require him to permit an execution which he had decided ought not to take place unless the change is agreed to by one who on no sound principle ought to have any voice in what the law should do for the welfare of the whole.

*Id.* at 487.[5] "Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done." *Id.* at 486.

---

[5] Addressing historical practices involving the English Crown's authority to banish British subjects upon consent when granting a pardon or commutation, the Supreme Court recognized "the requirement of consent was a legal fiction at best; in reality, by granting pardons or commutations conditional upon banishment, the Crown was

Further, the President did not condition the commutation on Davis's acceptance, and he required nothing from Davis. Instead, the President stated, "I hereby commute the sentences of death imposed as to each of the following named persons to sentences of life imprisonment without the possibility of parole, leaving intact and in effect for each named person all other conditions and components of the sentences previously imposed upon them." Exhibit "A," p. 1. Such an unconditional commutation did not need Davis's acceptance. *See Dennis*, 927 F.3d at 958–59 (recognizing unconditional commutations "do not require the recipient's consent") (citing *Perovich*, 274 U.S. at 486–88). Accordingly, Davis has no authority to reject the President's commutation because "[t]he considerations that led to the modification had nothing to do with his will." *Perovich*, 274 U.S. at 487.

## CONCLUSION

For the foregoing reasons, the Court should deny Len Davis's request to enjoin the President's commutation of his death sentence to a sentence of life imprisonment.

ZACHARY A. MYERS
United States Attorney

By:   /s/ *Kevin G. Boitmann*
KEVIN G. BOITMANN
Special Assistant United States Attorney
LA Bar Roll No. 26203
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3109
E-Mail: kevin.boitmann@usdoj.gov

---

exercising a power that was the equivalent and completely independent of legislative authorization." *Schick*, 419 U.S. at 261–62 (citing 11 W. Holdsworth, *History of English Law* 569–75 (1938)). "[B]y 1787 the English prerogative to pardon was unfettered except for a few specifically enumerated limitations." *Id.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 13, 2025, a copy of the foregoing document was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

                                                       */s/ Kevin G. Boitmann*
                                                       Kevin G. Boitmann
                                                       Special Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
(317) 226-6333

Office of the United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
(504) 680-3109